THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **MATTHEW RYAN MCCURLEY.** | |
| **Plaintiffs,** | |
| v. | **Civil No. 22-1031 (ADC)** |
| **CITIGROUP GLOBAL MARKETS HOLDINGS INC, ET AL.,** | |
| **Defendants.** | |

## OPINION AND ORDER

**I.     Procedural Background**

Matthew Ryan McCurley ("plaintiff") filed a *pro se* complaint against Citigroup Global Markets Holdings Inc. ("CGMH"), Citigroup Inc. (and together with CGMH, "Citigroup"), "Velocity Shares" ("Velocity"), and "Janus Henderson Group" ("Janus") (jointly, "defendants") under this Court's diversity jurisdiction. **ECF No. 1** at 2. Plaintiff claimed that defendant CGMH "owed" him more than $75,000 "because on 11/02/2016, the defendant signed and delivered a note promising to pay the plaintiff on 04/03/2020 $820,200." *Id.*, at 4.[1]

Defendants moved to dismiss all claims or, in the alternative, requested a transfer of venue. **ECF Nos. 17, 19**. Plaintiff responded with a filing captioned "motion for summary

---

[1] Plaintiff did not include any exhibits or attachments other than this District's "Civil Cover Sheet" and "Category Sheet" forms with his original complaint. *See* **ECF No. 1-1, 1-2**.

judgment and or default judgment."[2] **ECF No. 28**. Without leave of Court, plaintiff filed a subsequent motion requesting entry of default against defendants, which also included a response to defendants' motions to dismiss. **ECF No. 34**. Defendants opposed. **ECF Nos. 36**, **37**. Plaintiff then filed another set of filings without leave of Court. **ECF Nos. 35, 38**. Defendants responded and moved to strike plaintiff's unauthorized filings. **ECF Nos. 39, 40**.

On March 27, 2023, the Court entered an Opinion and Order addressing defendants' motions to dismiss and plaintiff's filings. **ECF No. 42**. The Court listed several violations of the Federal Rules of Civil Procedure and Local Civil Rules committed by plaintiff. Among them, the Court highlighted plaintiff's untimely response to Janus and Velocity's motion to dismiss (**ECF No. 28**) and the filing of an unauthorized second response thereto (**ECF No. 34**).[3] **ECF No. 42** at 4-5. Regardless, because of his *pro se* status, the Court entertained plaintiff's filings as responses to defendants' filings. **ECF No. 42** at 6-8, n.10.[4]

As to the merits of the motions to dismiss, the Court took note of the fact that although he filed several motions, plaintiff never really opposed Janus and Velocity's arguments for dismissal. Janus and Velocity's arguments were simple enough: that the complaint failed to state a single claim against them. Accordingly, the Court took note of plaintiff's decision not to

---

[2] Plaintiff's motion did not comply with Local Civil Rules 7 and 56.

[3] The Court also deemed this filing as a request to amend the complaint.

[4] However, the Court admonished plaintiff that: "the Court's leniency towards his pro se status will not go much further and that the Court expects him to comply with the applicable rules and law… the Court had to overlook not one, but several important mishaps and rule violations by plaintiff in order to allow him to amend his complaint." **ECF No. 42** at 13.

amend his pleading to address this issue even though he was apprised of this important omission by defendants. Moreover, the Court explained that even if it deemed plaintiff's subsequent and unauthorized filing at **ECF No. 34** as a request for leave to amend his complaint (filed a month and a half after Janus and Velocity's moved to dismissed), such filing did nothing to cure the complaint's deficiencies under Fed. R. Civ. P. 8 and 12(b)(6) in connection with Janus and Velocity. *See* **ECF No. 42**. Specifically, the Court underscored, "both the complaint and the proposed amendments, liberally construed, fail to state a claim for relief against Janus and Velocity" because they "make[] no mention whatsoever of co-defendants Janus or Velocity." **ECF No. 42** at 10. Therefore, bound by Fed. R. Civ. P. 12(b)(6) and accepting **ECF No. 34** as an amendment to the complaint, the Court dismissed plaintiff's claims against Janus and Velocity with prejudice. *Id.*, at 11.

On the other hand, because the original complaint and the filing at **ECF No. 34**, liberally construed, "include[d] allegations linking [Citigroup] to plaintiff's claims[,]" the Court denied without prejudice Citigroup's dispositive motion at **ECF No. 19**.[5] *See* **ECF No. 42** at 11.

Considering his *pro se* status, the Court granted plaintiff leave to file a formal amended complaint "in accordance with the applicable rules and the rulings in this Opinion and Order." **ECF No. 42** at 13. Plaintiff filed an amended complaint. **ECF No. 43**. Defendants moved to

---

[5] These two co-defendants also moved for dismissal for lack of long-arm jurisdiction or for transfer of venue. **ECF No. 19**. Because the Court herein holds that the amended complaint must be dismissed for failure to state a claim for relief, the Court need not address these other arguments. Moreover, for the same reasons, a 28 U.S.C. § 1404 transfer would not be practical and would certainly not be in the best interest or convenience of the parties, nor would it promote judicial economy. *See generally Coady v. Ashcraft & Gerel*, 223 F.3d 1 (1st Cir. 2000).

strike and dismiss the amended complaint. **ECF Nos. 49, 50**. Plaintiff filed responses to defendants' motions. **ECF Nos. 51**, **52**. Defendants replied, and plaintiff filed a response thereto. **ECF Nos. 53, 54**.

## II.     Legal Standard

It is well settled that in reviewing a motion for failure to state a claim upon which relief can be granted, the Court accepts "as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52–53 (1st Cir. 2013) (citation and internal quotation marks omitted). Only "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

The First Circuit established a two-prong test to evaluate "plausibility" under Fed. R. Civ. P 12(b)(6). *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (discussing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79.

Second, the court must then "take the complaint's well-[pleaded] (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz*, 669 F.3d at 55. Plausible "means something more than merely possible." *Id*. (citing *Iqbal*, 556 U.S. at 678-79). To survive a Rule 12(b)(6) motion, a plaintiff must allege more than a mere "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

**III.   Discussion**

    **A.**    *Pro se* **status**

Courts construe a *pro se* plaintiff's complaint liberally,[6] but "there is a long line of authority rejecting the notion that *pro se* litigants in [] civil… cases are entitled to extra procedural swaddling." *Eagle Eye Fishing Corp. v. U.S. Dept. of Commerce*, 20 F.3d 503, 506 (1st Cir. 1994). "[A] litigant's pro se status does not absolve him from compliance with the Federal Rules of Civil Procedure. This applies with equal force to a district court's procedural rules." *F.D.I.C. v. Anchor Properties*, 13 F.3d 27, 31 (1st Cir. 1994)(cleaned up); *Eagle Eye Fishing Corp. v. U.S. Dept. of Commerce*, 20 F.3d at 506 (denying "special solicitude" to a *pro se* litigant because "he knowingly chose to handle their own defense, forsaking professional assistance.").

In this case, the Court will liberally construe plaintiff's filings, but he must nonetheless bear the consequences of his actions and omissions like any other litigant before this Court.

---

[6] *Erickson v. Pardus*, 551 U.S. 89 (2007).

*Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 140 (1st Cir. 1985)(the "right of self-representation is not a license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted)).

**B.     The amended complaint fails to state a claim for relief for the alleged debt**

Plaintiff's amended complaint, or any of his pleadings for that matter, do not contain a "plain statement of the claim showing that the pleader is entitled to relief" nor do they "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 8(a)(2) and 9(b).[7]

First, the amended complaint "supersedes the antecedent complaint." *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008)(citing *InterGen N.V. v. Grina,* 344 F.3d 134, 145 (1st Cir. 2003)). "[T]he earlier complaint is a dead letter and no longer performs any function in the case." *Id*. (quoting *Kolling v. Am. Power Conversion Corp.*, 347 F.3d 11, 16 (1st Cir. 2003)). Accordingly, this Court "normally"[8] disregards superseded pleadings. But even if the Court pierced through the amended complaint and reached plaintiff's previous filings, they too fail to survive defendants' attacks under Fed. R. Civ. P. 12(b)(6).

Reading all of plaintiff's filings together, and considering the documents referenced in plaintiff's pleadings (specifically, the "Pricing supplement No. 2016… To Prospectus Supplement …" (herein, the "Pricing Supplement"))[9] as well as the concessions made by

---

[7] Plaintiff noncompliance with Fed. R. Civ. P. 9(b) is discussed in a separate section.

[8] *Connectu LLC v. Zuckerberg*, 522 F.3d at 91.

[9] *See* **ECF No. 43** at 34.

defendants, the Court can draw the following underlying facts.[10] Plaintiff claims to "own and hold[]" several exchange traded notes known as Velocity Shares 3x Long Crude Oil ETNs ("ETN"), issued by CGMH, which were linked to the "S&P GSCI Crude Oil Index ER." **ECF No. 50-2** at 1.[11] Plaintiff purchased these exchange trade notes on or around "11/02/2016" in the "ordinary course of trading… via [several] [non-Citigroup] broker[erage]" accounts. **ECF Nos. 43** at 34; **1** at 4.[12] He further asserts that the notes were due in December 2031. **ECF No. 1** at 5. But, according to him, Citigroup accelerated the notes in March 2020. *Id*. This acceleration, plaintiff claims, "requires the payment of principal which is $25 per exchange trade note," which plaintiff claims is more than $820,125. *Id*.; **ECF No. 43** at 36 and 42.[13]

Accordingly, plaintiff seeks relief pursuant to a wide variety of statutes, some of which are clearly inapplicable. *See* **ECF No. 43** at 9-10 (asserting claims under "Title VII and the [Age

---

[10] "When… factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998). *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55–56 (1st Cir. 2012)(quoting *Arturet–Vélez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 13 n.2 (1st Cir. 2005)("we can consider… implications from documents attached to or fairly incorporated into the complaint[…] and concessions in plaintiff's response to the motion to dismiss.")(internal quotation marks omitted)).

[11] For context, the Court takes note that this particular index "tracks futures contracts for crude oil." *Allen v. Citigroup Global Market Holdings, Inc.*, 2023 WL 2368833, at *2 (S.D.N.Y., 2023).

[12] Defendants raised several arguments questioning the plausibility of plaintiff's claims in light of the fact that they did not issue ETNs at the time the pleadings indicate that they were purchased or issued. However, because plaintiff's case is foreclosed by Fed. R. Civ. P. 12(b)(6) regardless of the correct date of the issuance or purchase of the here relevant ETNs, the Court need not address this argument.

[13] Furthermore, plaintiff also seems to claim that the payment he seeks is guaranteed by some of the defendants. *Id*., at 6; **43** at 2, 34. However, these claims are barely intelligible.

Discrimination in Employment Act][,]" and "42 U.S.C. 1983"). He also superficially makes reference to "fraud," and while quoting other out-of-circuit cases, mentions in passing violations of securities laws. However, the root of all claims (properly spelled out or not) is defendants' alleged failure to pay under the terms and conditions of the ETNs. *See* **ECF No. 43** at 5 (reiterating that the "primary liability driver in this case… is the payment of the principal of the note…").[14]

In the amended complaint's opening remarks, plaintiff sums up the reasoning behind his claims. In his words, "it is logical to presume… that no investor would allow the acceleration of a debt note without the repayment of principal[.]" **ECF No. 43** at 1. Contrary to plaintiff's generalized understanding of his investments (at least as far as his allegations go), the ETNs he purchased are not the traditional debt securities that provide interest and a guaranteed return of principal. Indeed, the issuer of the ETNs specifically warned against such notion in several ways.

First, the issuer explained that the ETNs "are not intended to be 'buy and hold' investments." **ECF No. 50-2** at 1. Instead,

> [t]he ETNs are intended to be daily trading tools for sophisticated investors to manage daily trading risks. They are designed to achieve their stated investment objectives on a daily basis, but their performance over

---

[14] The Court need not and cannot entertain every single reference to a statute or claim within plaintiff's amended complaint. As discussed before, the Court must "ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d at 55. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79.

> different periods of time can differ significantly from their stated daily objectives. The ETNs are riskier than securities that have intermediate- or long-term investment objectives, and may not be suitable for investors who plan to hold them for a period other than one day. Any decision to hold the ETNs for more than one day should be made with great care and only as the result of a series of daily (or more frequent) investment decisions to remain invested in the ETNs for the next one-day period. Accordingly, the ETNs should be purchased only by knowledgeable investors who understand the potential consequences of an investment linked to the Index and of seeking daily compounding leveraged long or leveraged inverse investment results, as applicable. Investors should actively and frequently monitor their investments in the ETNs, even intra-day. If you hold the ETNs for more than one day, it is possible that you will suffer significant losses in the ETNs even if the performance of the Index over the time you hold the ETNs is positive, in the case of the Leveraged Long ETNs, or negative, in the case of the Leveraged Inverse ETNs. Investing in the ETNs involves significant risks.

**ECF No. 50-1** at 1-2. Although not specifically alleged by plaintiff, his allegations suggest that he did not use the ETNs as a daily trading tool. In fact, the pleadings suggest that he held his position for several months until the notes were accelerated. As explained above, this decision increased the risks associated with the nature of these investments.

Second, the value of the investment over periods of time longer than one day was not necessarily similar to the performance of the tracked index. That is, the "ETNs are meant to provide leveraged long… exposure, as applicable, to changes in the daily closing level of the Index[.]" **ECF No. 50-3** at 10. Accordingly, "their performance over days, months or years can differ significantly from the performance of the Index during the same period of time." *Id*.

Among the risks plaintiff assumed, the Pricing Supplement clarified that these ETNs included "risk factors" such as the risk that they will "not pay interest or guarantee any return

of your initial investment and you may lose all… your investment…". **ECF No. 50-3** at 10. Moreover, due to the fact that these ETNs tracked the above referenced index (crude oil), they "will magnify any adverse movements in the closing level of the Index by 3 times and, therefore, are highly speculative and highly risky." *Id*. The issuer provided several examples of the risks associated with a movement of the index in the wrong direction. *See id*., (cautioning potential investors, "if the Index moves by 33.33% in an adverse direction, the ETNs will lose all of their value, all within a one-day period."). Based on this relatively high exposure, the issuer logged caveats throughout the Pricing Supplement, including, for example, "payment due at… acceleration may be less than the amount originally invested in the ETNs, the return on the ETNs may be negative." *Id*.

Third, contrary to plaintiff's vague claim that the ETNs guaranteed a return on acceleration, the Pricing Supplement, clearly states that:

> Unlike ordinary debt securities, the **ETNs do not offer interest payments and <u>do not guarantee any return of principal</u>** at maturity or **<u>upon</u> earlier redemption or <u>acceleration</u>**. Instead, each series of ETNs is designed for investors who seek leveraged long or leveraged inverse, as applicable, exposure to the performance of the Index on a daily basis plus the Daily Accrual and minus the Daily Investor Fee, as described below. **At maturity or <u>upon</u> early redemption or <u>acceleration</u>, holders of each ETN will receive an amount in cash that will vary depending on the level of the Index as described below, <u>which can be significantly less than the stated principal amount</u>** of the applicable ETNs <u>and could be zero</u>.

**ECF No. 50-4** at 9 (emphasis added). Therefore, according to the documents referenced by plaintiff in his amended complaint, plaintiff failed to state a claim for relief because, even

assuming as true all the well-pleaded allegations in the complaint, plaintiff is not entitled as of right to the payment he seeks ($25 per note). According to the documents submitted, contrary to plaintiff's claims, CGMH did not "guarantee" or "promise" a payout of $25 per note in case of acceleration of the ETNs. Neither did the acceleration of the ETNs "require[]" such payment. *See Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 229 n. 1 (1st Cir. 2013))("[i]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.").

Regardless of his *pro se* status, plaintiff, like any other plaintiff, "must state a plausible, not a merely conceivable, case for relief." *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010). In order to reach the plausibility threshold, courts "require[] that the factual allegations support the reasonable inference that the defendant is liable for the misconduct alleged." *Yacubian v. U.S.*, 750 F.3d 100, 108 (1st Cir. 2014)(quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir.2011)). Here, the factual allegations do not support a finding of plausibility of plaintiff's claims. To the contrary, the documents made part of the pleadings (documents that "trump" plaintiff's allegations, *see Young*, at 229 n. 1) foreclose on plaintiff's chances to set forth a plausible claim that the acceleration of the notes "required" the payout he seeks in the instant action.[15]

---

[15] In his original pleading, plaintiff made reference to a "promissory note." However, it seems that such reference was a mistake caused by the pre-printed terms in the *pro se* complaint form used by plaintiff. **ECF No. 1** at 4. Regardless, the true nature of the "notes" is irrelevant in light of the fact that plaintiff's pleadings fail to state a claim for relief and are thus dismissed with prejudice herein. In any event, to this date, plaintiff has failed to

Therefore, plaintiff's core claim is implausible and thus must be dismissed under Fed. R. Civ. P. 12(b)(6).[16]

### C.    The amended complaint fails to state a claim for relief for the alleged fraud and other causes of action under securities laws

The amended complaint and plaintiff's prior filings make a very superficial suggestion of fraud. As far as this Court can discern from plaintiff's filings, the fraud allegations are directly related and dependent on his main claim that defendants failed to pay $25 per note due to the acceleration. **ECF No. 43** at 1 ("no investor would allow the acceleration of a debt note without the repayment of principal, it is fraud for a barrower to attempt such [sic] unilaterally"); *see also id.*, at 32 (linking his "fraud charge" to the "acceleration of the note" and payment of the 'principal."). Given that defendants did not "promise" or "guarantee" a $25 per note acceleration payout, they cannot be liable for fraud for failing to pay plaintiff under such terms.[17]

But even if the Court disregarded that fact, plaintiff failed to meet the fraud pleading standard in Fed. R. Civ. 9(b). It is black letter law that Fed. R. Civ. P. 9(b) establishes a

---

submit a "promissory note" (*see* PR Laws Ann. Tit 19, § 504) and has not requested time or leave to do so. And since there are no "promissory notes" on the record, Fed. R. Civ. P. 12(b)(6) dismissal is proper, nonetheless.

[16] Plaintiff's response to Citigroup's motion to dismiss includes no additional argument. **ECF No. 52**. In fact, plaintiff asserted in his response that "all arguments regarding the dismissal motion are included in… [the] amended complaint." *Id.*, at 2. Even if there were additional arguments, they are undeveloped and thus waived. *See* Local Civil Rule 7; *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). Moreover, the Court highlights the fact that plaintiff decided not to file any meaningful response to defendants' argument that the Pricing Supplement states that in an event of acceleration, the holder of the ETNs had no guarantee of a $25 per note payout.

[17] Accordingly, even if the Court deemed that plaintiff's pleading asserted a claim of fraud, such claim would be foreclosed since the underlying acts or omission were not unlawful in the first place.

"heightened pleading standard." *North American Catholic Educational Programming Foundation, Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009). "[I]t requires not only specifying the false statements and by whom they were made but also identifying the basis for inferring scienter." *Id*.

The vague averments of fraud in plaintiff's pleadings do not clear any of Fed. R. Civ. P. 9(b)'s requirements. *See* **ECF No. 43** at 1, 32. To boot, other than his requested $25 per note payout, the Court cannot make out what are the basis for plaintiff's fraud claims. Plaintiff does not mention what the alleged misrepresentation was or where it was made. *Powers v. Boston Cooper Corp.*, 926 F.2d 109, 111 (1st Cir. 1991)(the "pleading was totally deficient in this respect… a fraud count that is almost wholly conclusory, and lacking in specifics is too vague to meet the Rule 9(b) benchmark."(Internal quotation marks omitted)). The fact is that plaintiff's pleadings do not contain any of the information required by the First Circuit for fraud claims. Regardless of how the Court construes plaintiff's pleadings, they fail to state a claim for fraud. S*ee generally Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004).

Aside from plaintiff's vague fraud allegations (none of which are factual or Fed. R. Civ. P. 9(b) compliant), the pleadings make reference to several District Courts cases in the Second Circuit dealing with similar ETNs investments ("Second Circuit cases").[18] These cases,

---

[18] *See, inter alia, Kirk v. CGMHI*, No. 20-7619 (ALC); *Jacobson v. CGMHI*, No. 21-2384 (ALC); *Allen v. CGMHI*, No. 21-2387 (ALC); *Zellner v. CGMHI*, No. 21-2387 (ALC); *Yambo-Torres v. CGMHI*, No. 21-2386 (ALC); *Korovin v. CGMHI*, No. 21-3294 (ALC); *Mai v. CGMHI*, No. 20-11129 (GBD) (GWG); *Ravi v. CGMHI*, No. 21-02223 (MKV); *Steadman v.*

however, present a very different question that is not raised by plaintiff in his pleadings or filings. To wit, most of the Second Circuit cases deal with claims of purported misstatements or omissions in the Pricing Supplement.[19] Even if plaintiff's block quotes from Second Circuit cases constituted well-pleaded allegations under the Fed. R. Civ. P. 12(b)(6) lens (they don't) or were specific enough under Fed. R. Civ. P. 9(b) (not even close), these claims too must be dismissed.

Assuming that plaintiff raised the same claims as the plaintiffs in the Second Circuit cases, *i.e.*, that fraud was committed by misrepresentations in the issuer's filings because the trading price of the ETNs did not track the index's increase at certain point in time, these claims too fail to state a claim. The District Courts presiding over the Second Circuit cases have held that these type of claims are unavailing. The same grounds would apply here to undermine plaintiff's similar claims (if any).

To wit, in a case dealing with the Pricing Supplement, the District Court for the Southern District of New York determined that:

---

*CGMHI*, No. 21-02430 (PGG) (RWL); *Labib v. CGMHI*, No. 21-02658 (LJS); *Thomas v. Citigroup Global Markets Holdings Inc.*, 21-3673 (VEC); 2022 WL 1051158, at *1 (S.D.N.Y., 2022). It is important to note that the Second Circuit has flagged an issue with these repetitive cases. David M. Kirk ("Kirk"), the *pro se* plaintiff in *Kirk v. CGMHI*, No. 20-6719 (ALC), is the "leader of an ETN-holder social media group that was created to gather information about CGMHI's alleged conduct." *Thomas v. Citigroup Global Markets Holdings Inc.*, 21-3673 (VEC). Some courts have flagged allegations that Kirk has drafted papers and filings for other *pro se* plaintiffs. *See id.*; *Kirk v. CGMHI*, No. 20cv7619 (ALC), 2022 WL 125615, at *2 (S.D.N.Y. Jan. 13, 2022).

[19] "[T]hat the description of the ETNs in the Pricing Supplement (dated February 6, 2020) became untrue statements of fact[s]" because at a certain point in time the secondary market price did not accurately track the index as advertised. *Thomas v. Citigroup Global Markets Holdings Inc.*, 2022 WL 1051158, at *5 (S.D.N.Y., 2022).

> the Pricing Supplement warns investors of the particular and heightened risks associated with investing in the ETNs. Neither CGMHI nor the title of the ETNs make any statement that the value of the ETNs will faithfully track three times the Index on a daily basis. Moreover, the Pricing Supplement expressly warns that trading prices for the ETNs were determined by the market—not CGMHI—and could 'vary significantly' from the Indicative Value for the ETNs based on the Index. Pricing Supplement at 18. The Pricing Supplement further states that the trading prices for the ETNs could be influenced 'by many unpredictable factors" beyond CGMHI's control like global supply and demand for crude oil and economic events affecting the commodities markets. *Id.* at 38. 'The Pricing Supplement thus forecloses the notion that the "3x" included in the ETNs' name is a representation that the ETN on a daily basis will rise or fall three times the extent to which the Index rises or falls—rather the daily value of the ETN is determined in the market.

*Allen v. Citigroup Global Market Holdings, Inc.*, 2023 WL 2368833, at *4 (S.D.N.Y., 2023); *see also Steadman v. Citigroup Global Markets Holdings Inc.*, 592 F.Supp.3d 230, 247 (S.D.N.Y., 2022); *Thomas v. Citigroup Global Markets Holdings Inc.*, 2022 WL 1051158, at *15 (S.D.N.Y., 2022)(holding the same).[20]

Moreover, regardless of the fact that the Pricing Supplement, in fact, did not include a misrepresentation and, conversely, included several warnings as to the risky nature of the investment, securities law jettisons any chances of plausible relief. "[I]t is not sufficient that, at some point after the registration statement became effective, some subsequent event made it no longer accurate." *Jiajia Luo v. Sogou, Inc.*, 465 F. Supp.3d 393, 406 (S.D.N.Y. 2020);[21] *Ponsa-Rabell*

---

[20] There are no First Circuit cases interpreting these types of investments.

[21] Defendants argue that even if the pleadings were interpreted in such a way that would hint at the possibility of a claim under Puerto Rico securities laws, such claims would still fail to state a claim because they would be time-barred. **ECF Nos. 50** at 13-14. In doing so, defendants went out of their way because there are no allegations

*v. Santander Securities LLC*, 35 F.4th 26, 33 (1st Cir. 2022)("We consider the entirety of the relevant facts available *at the time of the allegedly misleading statement*, not simply the words of the statement itself."(emphasis added)). Therefore, any potential claim under either the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, or the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, which is not properly spelled out,[22] is unavailing. *See also Slack Technologies, LLC v. Pirani*, 598 U.S. 759, 765 (2023)(under which plaintiff's claims pursuant Section 11, 15 U.S.C. § 77k(a), if any, would also be barred because plaintiff failed to "allege[] that he purchased [notes] traceable to the allegedly misleading registration statement. For all anyone could tell, he may have purchased [notes] unconnected to the registration statement.").

The pleadings' flaws go even deeper. If the Court held that plaintiff logged a claim of securities fraud under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C.A. §78u-4, such statute also requires "a heightened pleading standard on complaints alleging securities fraud." *Ponsa-Rabell v. Santander Securities LLC*, 35 F.4th at 33. "A plaintiff's complaint must specify each statement alleged to have been misleading, and the reason or reasons why the statement is misleading and state with particularity facts giving rise to a strong inference

---

whatsoever that could be construed as bringing claims under Puerto Rico securities laws. In any event, defendants are right, such claims would be time-barred. Plaintiff claims related to the securities he purchased on or around 2016 are time-barred under the Puerto Rico Uniform Securities Act ("PRUSA"), *see In re Financial Oversight and Management Board for Puerto Rico*, 578 F.Supp.3d 267, 291 (D.P.R. 2021) ("PRUSA forbids suits brought 'more than two (2) years after the sale contract has been executed").

[22] Again, the Court must "ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d at 55. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79.

that the defendant acted with the required state of mind." *Id* (cleaned up). After all, the "PSLRA requirements make it easier to identify the issues and to dismiss flawed complaints at the complaint stage." *Id*.

All this to say that plaintiff's amended complaint together with his other filings fail to state a claim for relief for fraud or other violation of securities law. *See* Fed. R. Civ. P. 12(b)(6) and 9(b).

### IV. Conclusion

In light of the above, the Court **GRANTS** the motion to dismiss at **ECF No. 50**. And, thus, pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) hereby dismisses plaintiff's amended complaint at **ECF No. 43** for failure to state a claim for relief. Accordingly, the motion to strike at **ECF No. 49** is **MOOT**. All remaining motions are **MOOT**.

Clerk of Court shall enter judgment dismissing the case with prejudice.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of March, 2024.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**